# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD TIKI ARRINGTON,<br><br>Defendant. | Criminal No. 07-189 (21) (JRT/JSM)<br><br>**MEMORANDUM OPINION ON RESOLUTION OF DISPUTED SENTENCING ISSUES** |

W. Anders Folk, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Robert M. Paule, **ROBERT M. PAULE, PA**, 250 Marquette Avenue South, Suite 1200, Minneapolis, MN 55401, for defendant.

Defendant Edward Tiki Arrington pled guilty to one count of knowingly and intentionally possessing with intent to distribute six grams of cocaine base ("crack"). After a three-level reduction for acceptance of responsibility, this gave Arrington a guidelines offense level of 21. *See* U.S.S.G. §§ 2D1.1(c)(8), 3E1.1(b). With Arrington's criminal history category of VI, his advisory imprisonment range was 77 to 96 months. *See* U.S.S.G. Ch. 5, Pt. A. The prosecution argued that Arrington's sentence should be enhanced pursuant to the guidelines "career offender" provision. *See* U.S.S.G. § 4B1.1. This enhancement would have increased Arrington's offense level to 31, and thus would have increased his advisory imprisonment range to 188 to 235 months. For the reasons given below, the Court denied the prosecution's request to apply that enhancement.

**ANALYSIS**

Section 4B1.1(a) of the sentencing guidelines states that "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." There is no dispute that Arrington's conviction is for a controlled substance offense, that he was at least eighteen years old at the time of that offense, and that Arrington has two prior felony convictions under Minnesota law for fleeing an officer in a motor vehicle. The parties disagree, however, about whether those convictions qualify as "crimes of violence" under the guidelines career offender provision.

The sentencing guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). Here, the prosecution argues that Arrington's prior convictions fall under the "otherwise" clause given in subdivision two of this definition.

In *Begay v. United States*, 128 S. Ct. 1581 (2008), the Supreme Court "held that for a crime to fall within the 'otherwise' clause it must pose a similar degree of risk of physical injury as the example crimes and be similar in kind to the example crimes." *United States v. Williams*, 537 F.3d 969, 972 (8th Cir. 2008) (citing *Begay*, 128 S. Ct. at 1585-86). "For a crime to be similar in kind to the example crimes, it should typically involve 'purposeful, violent, and aggressive conduct.'" *Id*. (citing *Begay*, 128 S. Ct. at 1586). In other words, "the 'otherwise' clause should only encompass crimes 'show[ing] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.'" *Id*. (citing *Begay*, 128 S. Ct. at 1587). For example, even if DUI and auto theft without consent are as dangerous as the example crimes, courts have held that they are not sufficiently similar to those crimes to fall under the "otherwise" provision. *See Begay*, 128 S. Ct. at 1586-87; *Williams*, 537 F.3d at 974.

In assessing whether a specific offense meets this standard, the Court must "consider the generic elements of the offense rather than the specific details of how [Arrington] committed the crime." *Williams*, 537 F.3d at 973 (citing *Begay*, 128 S. Ct. at 1584). This allows the courts to avoid "the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior." *Chambers v. United States*, 129 S. Ct. 687, 690 (2009). Where a statute places several different types of behavior in the same numbered section, and where those crimes may not all qualify as crimes of violence, the Court must determine which crime is at issue in the instant case. *Id.* at 691. In making this

determination, however, the Court is not to simply revert to examining the specific facts of an individual defendant's crime. *See id.* at 690. Rather, the Court must determine if the defendant was convicted under a particular portion of the statute that requires proof of generic elements that make the crime a crime of violence. *Id.*

The statute at issue here is Minnesota Statutes section 609.487, subdivision three, which makes fleeing an officer in a motor vehicle a felony under Minnesota law. That provision states:

> Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows **or should reasonably know** the same to be a peace officer, is guilty of a felony and may be sentenced to imprisonment for not more than three years . . . .

Minn. Stat. § 609.487, subd. 3 (emphasis added). Minnesota law further explains:

> [T]he term "flee" means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

Minn. Stat. § 609.487, subd. 1. In short, this subdivision covers conduct ranging from stereotypical high-speed chases to instances where a driver merely extinguishes her headlights after negligently failing to determine that a tailing vehicle is a police car. Put more generally, the statute appears to cover both conduct that is intentional and conduct that arises from mere negligence, and actions that are as active as accelerating away from a pursuing police car and as passive as merely failing to stop.

With that broad range of potential violations, it is critical to determine what sorts of violations Arrington was convicted of. In the Court's view, it is plain beyond dispute

determination, however, the Court is not to simply revert to examining the specific facts of an individual defendant's crime. *See id.* at 690. Rather, the Court must determine if the defendant was convicted under a particular portion of the statute that requires proof of generic elements that make the crime a crime of violence. *Id.*

The statute at issue here is Minnesota Statutes section 609.487, subdivision three, which makes fleeing an officer in a motor vehicle a felony under Minnesota law. That provision states:

> Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows **or should reasonably know** the same to be a peace officer, is guilty of a felony and may be sentenced to imprisonment for not more than three years . . . .

Minn. Stat. § 609.487, subd. 3 (emphasis added). Minnesota law further explains:

> [T]he term "flee" means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

Minn. Stat. § 609.487, subd. 1. In short, this subdivision covers conduct ranging from stereotypical high-speed chases to instances where a driver merely extinguishes her headlights after negligently failing to determine that a tailing vehicle is a police car. Put more generally, the statute appears to cover both conduct that is intentional and conduct that arises from mere negligence, and actions that are as active as accelerating away from a pursuing police car and as passive as merely failing to stop.

With that broad range of potential violations, it is critical to determine what sorts of violations Arrington was convicted of. In the Court's view, it is plain beyond dispute

that certain types of negligent, passive conduct prohibited by this statute are not on par with burglary of a dwelling, arson, extortion, or crimes involving the use of explosives, either in terms of the resulting risk of injury, or in terms of what these crimes tell the Court about whether the defendant is likely to "deliberately point the gun and pull the trigger." *See United States v. Harrison*, 558 F.3d 1280, 1294-96 (11th Cir. 2009) (concluding that a Florida fleeing statute that covered certain forms of passive conduct did not satisfy the crime of violence standard). On the other hand, it is conceivable that a knowing decision to speed away from an officer may satisfy this standard. *See, e.g.*, *United States v. Roseboro*, 551 F.3d 226, 234-41 (4th Cir. 2009).

The burden of demonstrating that the career offender provision applies – and, in turn, the burden of demonstrating that Arrington's underlying convictions were the type of fleeing convictions that satisfy the career offender provision – rests on the prosecution. *See Harrison*, 558 F.3d at 1296. Accordingly, the prosecution has submitted various documents related to Arrington's fleeing convictions. The Court is not persuaded, however, that these materials are sufficient to demonstrate that Arrington was convicted of a category of fleeing violations that constitute crimes of violence.

As an initial matter, the Court notes that it has not considered the police reports submitted by the prosecution. In demonstrating that a defendant was convicted of a crime of violence, the prosecution is limited to "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13,

- 5 -

26 (2005) (noting that this constraint on judicial fact-finding serves to avoid constitutional problems under the Sixth Amendment). Police reports fall outside of this group of materials and are not reliable evidence of what Arrington admitted to as part of his guilty pleas.

The remaining materials are insufficient to prove that Arrington was convicted of a crime of violence. The Court first notes that neither conviction was formally designated by the state court as a fleeing conviction of a particular kind. Instead the documents provided by the prosecution – including Arrington's written petitions to plead guilty – consistently describe his offenses simply as "fleeing" or "fleeing a peace officer in a motor vehicle." As to Arrington's 2005 conviction, the Court agrees that the criminal complaint in that case suggests that Arrington's crime was of a particularly active variety, involving high rates of speed. However, the record does not include either the plea colloquy or any alternative demonstration of the specific facts that Arrington ultimately admitted to. The possibility that Arrington may have qualified his admission to the fleeing charge is not something that this Court can dismiss out of hand, particularly when (1) the disputed statute covers such a broad range of conduct, (2) the written plea petition merely indicates that Arrington was guilty of "fleeing police in a motor vehicle," and (3) admitting knowing, violent conduct carried the potential risk of the sorts of severe penal consequences at issue here.[1] As to Arrington's 1999 conviction, the complaint and plea colloquy's vague description of Arrington briefly continuing to drive before jumping

---

[1] Moreover, without a plea colloquy, the Court has no affirmative admission or evidence establishing Arrington's state of mind at the time of the offense.

out of a stopped vehicle is simply inconclusive as to the category of violation that was at issue. Accordingly, this Court is not satisfied that it has sufficient proof of what type of fleeing crime Arrington pled guilty to, and it has not sentenced Arrington as a career offender.[2]

DATED: July 17, 2009　　　　　　　　　　　　\_\_\_\_s/ John R. Tunheim\_\_\_\_\_
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[2] The Court adds that nothing in this Memorandum should be interpreted to affirmatively conclude that Minnesota fleeing convictions of **any** sort qualify as crimes of violence. Because this Court did not have adequate evidence of what type of crimes Arrington committed, it did not need to reach that question.